UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KENNETH THOMPSON,

                                        Plaintiff,

                    -v-

DANIEL S. STEINBERG, ARON O. BRONSTEIN, and
RAQUEL VASSERMAN,

                                        Defendants.

---

20 Misc. 207 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Daniel Steinberg ("Steinberg") moves for sanctions under Federal Rule of

Civil Procedure 11 and for dismissal of this case, in which Joseph Paukman, Esq. ("Paukman"),

alleges, *inter alia*, that Steinberg committed fraud in the course of his criminal defense long ago

of Aron Bronstein ("Bronstein").  Because Paukman had attempted to voluntarily dismiss the

case within the 21-day safe-harbor period provided by Rule 11, the Court denies Steinberg's

motion for sanctions, and grants the motion to dismiss the case.

I.      **Background**

        A.      **2000:  The Underlying Prosecution of Bronstein**

        In October 2000, Bronstein pled guilty to one count of conspiracy to commit securities

fraud and wire fraud in violation of 18 U.S.C. § 371, and 13 counts of substantive securities

fraud in violation of 15 U.S.C. §§ 77q(a), 77x, and 18 U.S.C. § 2.  *United States v. Sakharovich,*

*et al.*, 00 Cr. 100 (PAE), Dkt. 83.  In March 2001, Bronstein was sentenced to 46 months'

imprisonment, three years' supervised release, and was ordered to pay restitution to the victims

1

of his fraud in the amount of $3,209,000.00 (for which he was severally liable along with his co-defendants). *Id.* A victim of Bronstein's fraud was Kenneth Thompson, who is now deceased.

In October 2017, 17 years after Bronstein pled guilty, Paukman—who is counsel to Thompson's estate—began filing letters in this Court. He initially moved for an order to resentence Bronstein pursuant to 18 U.S.C. § 3615 for failure, despite allegedly having a source of income, to pay court-ordered restitution. *Id.*, Dkt. 77. Paukman filed additional letters with this Court on December 15, 2017, *id.*, Dkt. 99, and on December 29, 2017, *id.*, Dkt. 100, alleging various fraud and money laundering schemes. *See, e.g., id.*, Dkt. 99 ¶¶ 22, 27.

After negotiations, on December 29, 2017, Bronstein—whose supervision by the Court had by then expired—agreed to a repayment schedule, under which Bronstein would pay at least $800 per month to the Government. *Id.*, Dkt. 101. On January 9, 2018, the Court, to whom the long-closed *Sakharovich* case had since been reassigned, approved the negotiated repayment schedule. *Id.*, Dkt. 102.

**B.    2018-2021:  Paukman's Spate of Filings on Docket 00 Cr. 100**

In February 2018, Paukman filed three letter motions concerning a case in the Eastern District of New York, *Residential Fences v. Rhino Blades, Inc.*, 14 Civ. 2552 (JMA) (SIL) (E.D.N.Y. Oct. 20, 2016), on the *Sakharovich* docket. *See* 00 Cr. 100, Dkts. 103–05. The Court denied those motions in February 2018. On January 28, 2020, Paukman filed a fourth letter alleging various fraud schemes on Bronstein's part. *See id.*, Dkt. 109. The next day, he filed a fifth, seemingly identical, letter. *Id.*, Dkt. 101. The day after, Paukman filed yet another seemingly identical letter. *Id.*, Dkt. 111.

On February 7, 2020, the Court issued an order in response to these letters:

The letter appears to seek monetary relief from the defendant in this 20-year-old criminal case . . . . Mr. Paukman's letter, however, is insufficiently coherent for the

2

> Court to understand (1) the pertinent background of this case, (2) the legal and
> factual bases for granting relief to the estate of Mr. Thompson; and (3) concretely
> what such relief should be. The Court accordingly denies Mr. Paukman's request
> for a hearing into such matters. The denial is without prejudice. Mr. Paukman is
> at liberty to submit a substantially clearer and more lawyerly articulation of
> pertinent background, facts and law. . . .

*Id.*, Dkt. 112. Paukman proceeded to file six more letter motions on the *Sakharovich* docket,

between February and December 2020. They are close variations on a theme. In each, Paukman

continued to make similar allegations, to the effect that Bronstein was failing to make required

restitution payments. *Id.*, Dkts. 113–118. Paukman's December 1, 2020 letter alleged that

Bronstein had failed to pay monthly restitution payments, as ordered by the Court, *see id.*, Dkt.

102, since January 2020. *Id.*, Dkt. 118.

On December 2, 2020, the Court issued an order directing the Government to respond as

to the status of restitution payments due to Thompson. *Id.*, Dkt. 119. The next day, counsel for

Bronstein filed a letter with attached exhibits demonstrating that Bronstein had been making

restitution in accordance with the Court's order. *Id.*, Dkt. 120.

On December 8, 2020, the Government filed a letter, similarly reporting that Bronstein

was fully compliant with his restitution obligations. *Id.*, Dkt. 121. The Government stated that,

per the Court's January 9, 2018 Order requiring Bronstein "to make restitution payments of at

least $800 per month," Bronstein "has consistently paid $800 each and every month in the 35

months since the Court issued its order," with the most recent payment issuing on November 19,

2020," and that the Clerk of Court "disburses payment of criminal restitution on a pro rata basis."

*Id.*

The next day, Paukman responded with a filing stating that the Clerk of Court had

informed him that it had not received any money to be distributed. Paukman accused Bronstein

and his alleged affiliates of perpetrating various vaguely described wrongs against him. *Id.*, Dkt.

122 (alleging forgeries by Bronstein in state court and other misdeeds). On December 11, 2020, the Court issued an order directing the Government to respond to Paukman's contentions in this most recent letter. *Id.*, Dkt. 123.

On January 7, 2021, the Government responded. It again confirmed that Bronstein was complying with his restitution obligations. And it argued that Paukman's other allegations were not properly before the Court. *Id.*, Dkt 124. The Government explained that Paukman's letter "misapprehends the relevant facts and applicable law regarding the criminal restitution order in this case." *Id.* at 2.

The Government set out several points pertinent here. Paukman's allegations "that he is a victim of numerous misdeeds purportedly committed by Bronstein and others (such as forgeries, being taken advantage of in bankruptcy court, and being 'railroaded . . . into sham employment')," the Government stated, "[are] beyond the scope of this criminal case." *Id.* (quoting *id.*, Dkt. 122). It explained that Paukman was essentially seeking "to intervene and direct the collection of restitution from and further criminal proceedings against Bronstein," which he lacked a right to do. *Id.* Bronstein was fully compliant with his required restitution payments, the Government noted, and "no statute or rule authorizes victims to intervene in a criminal case." *Id.* (collecting cases including *In re Application of the New York Times Co.*, 878 F.2d 67, 67–68 (2d Cir. 1989) ("[N]o rule of criminal procedure allows intervention by third parties in a criminal proceeding.")). Nor, the Government noted, did either the Crime Victim Rights Act ("CVRA"), 18 U.S.C. § 3771, *et seq.*, or the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A-3664, give Paukman any rights to intervene. These statutes afford rights only as to a "victim," which is defined "as a person directly and proximately harmed as a result of the commission of a federal offense," and Paukman, while purporting to act

4

on behalf of Thompson's estate, was not a "victim" of any offense charged in this case.  00 Cr.

100, Dkt. 124 at 3 (citing 18 U.S.C. §§ 3663A(a)(2) and 3771(e)).  Finally, the Government

noted, Paukman lacked standing to compel the Government to prosecute Bronstein for various

additional alleged crimes.  *Id.* (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n

American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the

prosecution or nonprosecution of another.")).

On January 9, 2021, Paukman filed yet another unsolicited letter.  This one suggested that

the unsealing of certain state-court divorce proceedings might yield evidence of Bronstein's

financial circumstances.  Paukman based this proposal on purported out-of-court statements by

unnamed family members of Bronstein's.  *Id.*, Dkt. 125.

On January 11, 2021, the Court issued an order adopting the Government's analysis of

Paukman's claims, including as to why they were nonjusticiable, and dismissed Paukman's

pending requests.  *Id.*, Dkt. 126.  The Court stated:

> Clear evidence shows that Bronstein has consistently met his restitution
> obligations each month, including most recently with an $800 payment on
> December 29, 2020.  *See* Dkt. 124-1.  Paukman has not offered a factual basis to
> contend otherwise, and the Court is aware of none.  The Court thus does not have
> occasion to take action with respect to Bronstein's payment obligations.
>
> Nor is action warranted as to Paukman's other allegations.  For the reasons
> set forth in the Government's submission, federal law does not provide Paukman,
> or the estate he claims to represent, any right to pursue, through this criminal action,
> the other wrongs in which Bronstein allegedly engaged.  *See* [Dkt. 124] at 2–4.  Nor
> does it allow Paukman to compel the Government to do so.  *Id.*  Last, the limited
> evidence Paukman has submitted, purporting to show Bronstein fraudulently
> drawing on his family's accounts, does not at this time provide a basis on which to
> modify the restitution schedule the Court previously imposed.  *See* 18 U.S.C.
> § 3664(k) (authorizing, but not requiring, the Court to modify restitution amounts
> in light of a "material change in the defendant's economic circumstances").

*Id.* The Court also noted in response to Paukman's January 9, 2021 request to unseal Bronstein's divorce proceedings: "Paukman offers no authority suggesting that the Court can or should order such relief," and thus the Court would "not do so at this time." *Id.*

### C.   The Instant Action

On May 7, 2020, in the midst of Paukman's filings on the *Sakharovich* criminal docket, he filed a motion to initiate this action, 20 Misc. 207 (PAE), against, *inter alia*, Steinberg and Bronstein, which was assigned to this Court on December 9, 2020.  In his Complaint, Paukman alleged "fraudulent concealment by Aron O. Bronstein and counsel, Daniel Steinberg[,] via forged notary and signatures to hide restitution from the victims in this case," and moved for an increase in Bronstein's restitution duties, the initiation of criminal charges against Bronstein and his counsel, and vacating the sealing of records of Bronstein's divorce.  Dkt. 1 at 1.  Steinberg's filing appears effectively to duplicate a letter he had earlier filed on the *Sakharovich* criminal docket, 00 Cr. 100, Dkt. 115.

On December 9, 2020, the Court issued an order noting, as reviewed above, that it had received the letter from the Government dated December 8, 2020, *see id.*, Dkt. 121, reporting that Bronstein was fully compliant with his restitution obligations, and noting that the Court lacked "any factual basis to contend otherwise." 20 Misc. 207, Dkt. 2.  The Court declined to take further action and directed Paukman to direct to the Government any further inquiries as to the status of Bronstein's compliance with his restitution obligations.  *Id.*

On January 15, 2021, Paukman filed a motion to consolidate the closed *Sakharovich* case, 00 Cr. 100 (PAE), with the present case.  *See* 20 Misc. 207, Dkt. 3.  In it, Paukman stated that he intended to withdraw his pending motion in this case, "*without* prejudice," because it duplicated his letters in 00-Cr-100, and because Steinberg had made a written demand that he withdraw the

motion and stating that Steinberg would otherwise pursue Rule 11 sanctions.  Paukman filed substantially the same letter on the *Sakharovich* docket.  *See* 00 Cr. 100, Dkt. 127.

On January 19, 2021, the Court issued an order, docketed in both cases, stating, *inter alia*, that Paukman's latest letter "does not have a clear purpose" and does not seek relief that the Court could or would give.  *See* 00 Cr. 100, Dkt. 128; 20 Misc. 207, Dkt. 4.  Because "there is no cause for judicial action in either" case, the Court stated, "[e]xcept in the event of new developments meriting the Court's intervention, the Court does not see a cause for further correspondence." 20 Misc. 207, Dkt. 4; *see* 00 Cr. 100, Dkt. 128.

### D.    Steinberg's Sanctions Motion

On January 12, 2021, Steinberg served a letter and notice of a potential motion for Rule 11 sanctions on Paukman, as Federal Rule of Civil Procedure 11(c) requires as a precondition to such a motion.  *See* 20 Misc. 207, Dkt. 5, Ex. C; *see also* Ex. D (emails between Paukman and Steinberg regarding Rule 11 motion).

On January 15, 2021, Paukman filed his motion to consolidate, discussed above, in which he stated: "This letter-motion is to withdraw Docket # 1 without prejudice as it is a duplicate of a motion filed in the USA v Bronstein 00-cr-100, Docket 115, criminal case and because today I received a letter from Daniel Steinberg asking me to withdraw the above-referenced proceeding (Docket 1) or he will seek [R]ule 11 sanctions[.]" Dkt. 3 at 1.

No further filings on the case were made until March 2, 2021, when Steinberg moved to dismiss the case and for Rule 11 sanctions against Paukman, "for commencing this groundless proceeding for the purpose of harassing defendants . . . [and] for presenting wild and fabricated factual contentions in the initiating document without evidentiary support or a reasonable belief therefore, formed after an inquiry reasonable under the circumstances." 20 Misc. 207, Dkt. 5.

("Def. Mot."). Steinberg's motion alleges that Paukman's action was driven by a "spurious personal vendetta" against Bronstein, a client of Steinberg's law firm. Dkt. 6 ("Def. Mem.").

The same day, the Court directed Paukman to respond by March 16, 2021. Dkt. 7. On March 3, 2021, Paukman moved for an extension of time, on the ground, *inter alia*, that he "wish[ed] to serve a safe harbor letter on Mr. Steinberg asking him to withdraw his [R]ule 11 motion." Dkt. 8 at 10. The Court denied the extension request because the 21-day "safe harbor" window—which had been triggered by Steinberg's January 12, 2021 letter—had by then closed. Dkt. 9.

On March 3, 2021, Paukman filed an opposition to the sanctions motion, which, including exhibits, was more than 106 pages long. Dkt. 10 ("Opp'n"). In it, Paukman largely reiterated his earlier claims, including of fraud on Bronstein's and Steinberg's part. On March 17, 2021, Steinberg filed a reply. Dkt. 12 ("Reply").

On April 1, 2021, Paukman submitted a new letter on the *Sakharovich* docket. *See* 00 Cr. 100, Dkt. 130. It asked that the Court "investigate a Bank of America Bank Checking account number" belonging to Bronstein, to determine whether Bronstein should be required to pay more than presently required in monthly restitution payments. *Id.* The next day, the Court issued an order denying the request as "unauthorized, improper, and unsupported." *Id.*, Dkt. 131.

## II.    Legal Standards Governing Motions for Rule 11 Sanctions

Federal Rule of Civil Procedure 11 gives a district court authority to sanction a litigant or its counsel. "Rule 11 is violated if a pleading is submitted for 'any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *Watkins v. Smith*, No. 12 Civ. 4635

(DLC), 2013 WL 655085, at *5 (S.D.N.Y. Feb. 22, 2013) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)).

The Rule thus sets an objective test.  The Court may validly impose sanctions if the offending attorney responsible for the submission is found to have acted with "objective unreasonableness." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *see Simon DeBartolo Grp., LP v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) ("Rule 11(b)(2) establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." (quotations omitted)).  When a party's legal contentions are challenged as violating Rule 11, the "operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify, or reverse the law as it stands." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (quotations omitted); *see also Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." (quotations omitted)).

"The decision whether to impose a sanction for a Rule 11(b) violation is [ ] committed to the district court's discretion." Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).  If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).  In its discretion, a court may award such sanctions where the filing is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; the claims are "[un]warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and "the factual contentions" lack "evidentiary support." *Id.* 11(b).  "Such an award

serves two ends: it 'vindicat[es] judicial authority,' and it makes the wronged party 'whole for expenses caused by his opponent's obstinacy.'" *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 2021 WL 968819, at *4 (2d Cir. Mar. 16, 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

"Because of its potency, however, a court's inherent power [to sanction] 'must be exercised with restraint and discretion.'" *Id.* at *5 (quoting *Chambers*, 501 U.S. at 44). When it comes to monetary sanctions, a court should sanction only "'bad faith, vexatious, or wanton' acts or actions undertaken for 'oppressive reasons.'" *Id.* (quoting *Chambers*, 501 U.S. at 45–46) (cleaned up). "[S]eparating frivolous claims from mere zealous advocacy can be difficult," and thus courts are required "to make two findings before imposing such sanctions: first, that 'the challenged claim was without a colorable basis' and, second, that 'the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'" *Id.* (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)). "[B]oth findings 'must be supported by a high degree of specificity in the factual findings.'" *Enmon*, 675 F.3d at 143 (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)).

A claim is without colorable basis when it "lacks any legal or factual basis." *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114. "Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (quotations omitted). As to the bad-faith requirement, bad faith "may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay'" or harassment. *Id.* at 336 (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). In determining whether such conduct is

10

sanctionable, a "court should primarily focus on the *intent* of the potentially sanctionable

conduct, not on its *effect.*" *Int'l Techs. Mktg.*, 2021 WL 968819, at *5.

Importantly, before a motion for sanctions is filed with the Court, it must "be served

under Rule 5," and "it must not be filed or be presented to the court if the challenged paper,

claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after

service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). This provision, known

as the "safe harbor" period, is meant to ensure due process. The provision requires "the subject

of a sanctions motion be informed of: (1) the source of authority for the sanctions being

considered; and (2) the specific conduct or omission for which the sanctions are being considered

so that the subject of the sanctions motion can prepare a defense." *Schlaifer Nance & Co.*, 194

F.3d at 334; *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d

170, 175–76 (2d Cir. 2012). The safe harbor period also gives the subject of the intended

sanctions motion an opportunity to avoid sanctions, by withdrawing the sanctionable filing

within 21 days of being served with notice of it.

As the advisory committee explained: "These provisions are intended to provide a type

of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on

the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that

position or to acknowledge candidly that it does not currently have evidence to support a

specified allegation." Fed. R. Civ. P. 11, Advisory Committee's Note (1993). To avoid

sanctions, the alleged violation can be corrected by "withdrawing (whether formally or

informally)" the allegedly sanctionable "allegation or contention," and if that is done, "the

motion should not be filed with the court." *Id.* "[T]he Rules Committee Notes to the 1993

revision make plain that withdrawal need not be a formal affair." *Carruthers v. Flaum*, 450 F.

Supp. 2d 288, 306 (S.D.N.Y. 2006).  "[I]f a party indicates an intention to withdraw a contested claim during the safe harbor period, that suffices—even if additional steps remain to be taken under Rule 41." *Id.* (citing *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 216 F.R.D. 29 (E.D.N.Y. 2003)); *see Mass. Connection Inc. v. City of Hartford*, No. 05 Civ. 485, 2005 WL 2123534 (D. Conn. Sept. 1, 2005).

## III.   Discussion

Because Paukman attempted to timely withdraw this case after Steinberg provided notice of his intended motion for sanctions under Rule 11, the Court denies the Rule 11 motion and grants Paukman's voluntary motion to dismiss the case.  The Court does so notwithstanding that Paukman filed the withdrawal under an incorrect header that made his intentions less than clear. The Court emphasizes, however, that had Paukman not moved to withdraw the case promptly upon Steinberg's notice to him of the forthcoming sanctions motion, the Court would have imposed substantial sanctions on Paukman because the complaint he filed in this case and the relief it sought, as well as the manner in which Paukman had, to date, litigated, were all frivolous, vexatious, and abusive.

Three days after Steinberg served a letter and notice of a potential motion for Rule 11 sanctions on Paukman, on January 15, 2021, Paukman filed a motion stating: "This letter-motion is to withdraw Docket # 1 without prejudice[.]"  Dkt. 3 at 1.  Paukman named this motion on the docket as a "motion to consolidate," which led the Court to misconstrue the motion's purpose. But a review of the motion reflects that, within it, Paukman stated that it was being filed in response to: "Steinberg asking me to withdraw the above-referenced proceeding (Docket 1) or he will seek rule 11 sanctions[.]"  *Id.*  Therefore, although Paukman failed to file his voluntary dismissal motion in the format required by the local rules of this District to effectuate his stated

12

intent, he did ultimately, if clumsily, notify the Court of his wish to voluntarily dismiss his case, and he did so within the safe-harbor period.

The Court accordingly finds that Paukman's attempt to withdraw sufficiently met the requirements of Rule 11 to "avoid sanction." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327–28 (2d Cir. 1995) (explaining Rule 11(c)(1)(A) gives a party facing sanctions "21 days during which factual or legal contentions may be withdrawn or appropriately corrected in order to avoid sanction"); *see Carruthers*, 450 F. Supp. 2d at 306 ("So as long as the plaintiff takes some step leading to the withdrawal of the offending claim—whether offering to withdraw the claim or moving for leave to withdraw them—Rule 11 will be satisfied, even if it takes longer for the requirements of Rule 41 to be completed."); *Lindner v. Am. Exp. Corp.*, No. 06 Civ. 3834 (JGK), 2009 WL 54493, at *1 (S.D.N.Y. Jan. 8, 2009). Further, because Steinberg had yet to file an answer, the Court finds that Paukman was permitted, on his own, to voluntarily dismiss this case under Rule 41(a) without prejudice. *See* Fed. R. Civ. P. 41(a)(1) ("[P]laintiff may dismiss an action without a court order by filing:  a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . . [L]ess the notice or stipulation states otherwise, the dismissal is without prejudice.").  Although Paukman failed to properly file his notice of withdrawal, to effectuate Paukman's manifest intent, the Court grants his motion for voluntary dismissal of this action.

The Court accordingly is constrained to deny Steinberg's motion for sanctions, because Paukman timely acted within the safe harbor to dismiss this case.

Nevertheless, the Court emphasizes that had Paukman not done so, the Court assuredly would have imposed sanctions.  Paukman's complaint and the relief it sought, and Paukman's ensuing pugnacious but baseless submissions, were frivolous, vexatious, and abusive.  Steinberg

understandably was prepared to pursue sanctions because, after Paukman's factual allegations and bid for relief had repeatedly been found baseless in the *Sakharovich* criminal case, Paukman reprised these claims in this equally baseless miscellaneous case, brought, transparently, for the purpose of harassing Steinberg and Bronstein. Def. Mem. ¶ 1. And Paukman, consistent with prior form, failed to reply in a cogent manner in his papers opposing sanctions. His opposition instead substantially consisted of stitched-together screenshots of emails, signatures, and other cases, *see, e.g.*, Opp'n at 6–8, and general, and overheated, allegations of schemes concocted by those he sued to defraud him and to wage a "holy war" against him, *see id.* at 3, 11.

Had Paukman not essentially contemporaneously mooted the sanctions issue by asking that the case be dismissed, sanctions would have clearly been warranted. As to the element of objective unreasonableness, apart from the other deficiencies in his Complaint in this action, Paukman, as he well knew at the time he filed the Complaint, lacked standing to pursue the restitutionary relief he centrally seeks. In January 2021, this Court had explicitly warned Paukman that he did not have standing to pursue an increase in Bronstein's court-ordered restitution. *See Sakharovich*, Dkt. 126 at 2 ("[F]ederal law does not provide Paukman, or the estate he claims to represent, any right to pursue, through this criminal action, the other wrongs in which Bronstein allegedly engaged . . . . Nor does it allow Paukman to compel the Government to do so."). Standing is a foundational requirement for seeking relief. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 611 (2007) ("The constitutional requirements for federal-court jurisdiction—includ[es] the standing requirements[.]"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case."). Instead of heeding the Court's warning, Paukman responded audaciously, by bringing this miscellaneous action seeking the

same relief. And thereafter, despite being put on notice by the Court that he lacked standing to pursue such relief, Paukman did not come forward at any point with any authority or coherent explanation as to why he has standing to seek such relief in this effectively mirror-image action. For that reason alone, his claims here were thus objectively frivolous, "without colorable basis," and "lack[] any legal or factual basis." *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114; *see StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 309 (2d Cir. 2014) (upholding sanctions where sanctioned party's allegations were "objectively unreasonable"); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1301 (Fed. Cir. 2014) (upholding sanctions where plaintiff's claim was "frivolous"); *Miller v. Bridgeport Bd. of Educ.*, No. 12 Civ. 1287 (JAM), 2014 WL 3738057, at *7, 10 (D. Conn. July 30, 2014) (granting sanctions where plaintiff's conduct was "objectively unreasonable").

Had Paukman not timely moved to drop this lawsuit, the Court would also have found against Paukman on the subjective element of the sanctions inquiry—that his decision to sue Steinberg and Bronstein was "motivated by improper purposes such as harassment or delay." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 2021 WL 968819, at *4. Bad faith "may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay'" or harassment. *Schlaifer Nance & Co.*, 194 F.3d at 336 (quoting *Shafii*, 83 F.3d at 571).

No explanation other than bad faith can explain Paukman's decision—in what appears to be a vendetta against Bronstein and his lawyer, Steinberg—to file and pursue this baseless action against them. In the underlying *Sakharovich* action, the Court repeatedly warned Paukman not only that he lacked standing to pursue the restitutionary and other relief he sought, but that his serial letters, which took the form of screeds and never sober analysis, were "incomplete" and

15

lacked a "clear purpose," *see, e.g.*, 20 Misc. 207, Dkt. 4.[1]  Despite this notice, Paukman

*Sakharovich* continued to lob letter after letter at this Court and his opponents, failing to amend

his motions or to undertake a "lawyerly articulation of pertinent background, facts and law."  00

Cr. 100, Dkt. 112; *see, e.g.*, *id.*, Dkt. 127; 20 Misc. 207, Dkt. 10.  And once his bid for relief

there had decisively been shut down by the Court in no uncertain items, he filed this

miscellaneous action, with a Complaint essentially cut and pasted from a letter he had submitted

in *Sakharovich* and which the Court had there rejected as not affording a basis for relief.

There is no basis on which Paukman's filings can be squared with the obligation of good

faith.  Not only did the Government and Steinberg explain why Paukman's bid for restitutionary

and related relief in *Sakharovich* was dead on arrival—this Court did.  And Paukman has never

come forward with any defense of his bid for relief here.  He has never attempted to explain, for

example, why his claims here are "well grounded in fact and . . . warranted by existing law or a

good faith argument for the extension, modification, or reversal of existing law."  *See Watkins v.

Smith*, 2013 WL 655085, at *5.  On its independent review, the Court cannot find any good faith

basis for the filing of this lawsuit.  The Court thus finds that Paukman's pursuit of this action

demonstrated "'bad faith, vexatious, or wanton' acts or actions undertaken for 'oppressive

reasons.'"  *See Int'l Techs. Mktg., Inc.*, 2021 WL 968819, at *4.  But for Paukman's timely

attempt to utilize the Rule 11 safe harbor, this conduct would have warranted monetary

---

[1] As Steinberg notes, this appears to be of piece with Paukman's manner of lawyering in other courts.  Steinberg attaches several orders from the King's County Supreme Court relating to motions Paukman filed there, which Judge King there held "unfounded and meritless."  Def. Mot. Ex. 11.  Steinberg chronicles, too, that Paukman violated a Stay Order and a Temporary Restraining Order in an unrelated case in which Paukman had made similarly baseless claims against Bronstein.  *Id.* Ex. 1 ¶ 29, Ex. 8.; *Madigan v. Bronstein*, 18 Mc. 61 (WHP) (S.D.N.Y. Apr. 12, 2018).  For avoidance of doubt, Paukman's conduct in other matters, while informative as to his lack of good faith, is not a basis for the Court's determination that, had Paukman failed to timely move to dismiss the case, the Court would have granted the sanctions motion.

sanctions. *See Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 275 (2d Cir. 2021) (upholding sanctions where the "district court, aware of proceedings before another Southern District judge . . . specifically warned [plaintiff] that he should be "very careful about the representations you make to me," and found that plaintiff had acted in "bad faith"); *Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730, 767 (S.D.N.Y. 2010) (finding [plaintiff's] claims "entirely without merit as a matter of law . . . [and] conclud[ing] that she is pursuing these claims for an improper purpose," and sanctioning plaintiff, awarding adversary "reasonably engendered attorneys' fees").

Specifically, had Paukman not timely moved to dismiss the case, the Court would have awarded Steinberg all fees and costs he had reasonably incurred in litigating this miscellaneous action. In the Court's decision in *Pirri v. Cheek*, also involving the pursuit of frivolous claims on notice that they were baseless, this Court found that the plaintiff's "repeated submission of arguments unmoored from law or facts [is] not harmless," as it "wast[es] the time of this Court, which was called upon to referee and adjudicate the resulting disputes," as well as "wast[es] the time and money of [the defendant]." 19 Civ. 180 (PAE), 2020 WL 2520593, at *12 (S.D.N.Y. May 18, 2020). So too, here. An award of attorneys' fees to the adversary burdened with responding to baseless claims would have served the important purpose of "deter[ring] the bringing of lawsuits without foundation." *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1652 (2016) (quoting *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 420 (1978)); *see Pirri*, 2020 WL 2520593, at *12 ("That is particularly important in this litigation, where [plaintiff] has persisted in filing frivolous, unreasonable, and groundless claims, even when they were repeatedly rejected by this Court—up to and including his opposition to defendants' instant motion for fees." ). Although the Court cannot take this step

because Paukman did timely invoke the Rule 11 safe harbor, the Court expects that Paukman

will be deterred by this discussion—and the prospect of a sizable sanctions award—from any

future vexatious litigation conduct.

## CONCLUSION

For the foregoing reasons, the Court grants Paukman's motion to voluntarily dismiss this

case and denies Steinberg's motion for sanctions.  The Clerk of Court is respectfully directed to

close the motion pending at Docket 5 and to terminate this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: September 1, 2021
     New York, New York

18